# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **COCHLEAR LTD.,** | : | Civil Action No. 18-6684 BRM DEA |
| | : | |
| **Plaintiff,** | : | |
| | : | **MEMORANDUM OPINION** |
| **v.** | : | **AND ORDER** |
| | : | |
| **OTICON MEDICAL AB, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### ARPERT, United States Magistrate Judge

This matter comes before the Court on a Motion by Plaintiff Cochlear Ltd. for leave to file an Amended Complaint pursuant to Fed. R. Civ. P. 15 and 16, as well as L. Civ. R. 3.7. ECF No. 57. Plaintiff also seeks leave to amend its Infringement Contentions, as well as to amend its responses to Defendant's Invalidity Contentions. *Id.* Defendant Oticon Medical AB opposes the Motion in its entirety. *See* ECF No. 69. Having reviewed the parties' written submissions and considered the Motion without oral argument pursuant to Fed. R. Civ. P. 78, for the reasons stated below, Plaintiff's Motion is **GRANTED.**

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the Court writes for the parties, it recites only those facts and the procedural history necessary to its disposition.[1] On April 13, 2018, Cochlear filed a Complaint alleging that Oticon's Ponto BHX Implant infringed on Cochlear's '807 patent for a "Bone Anchor Fixture for a Medical Prothesis." ECF No. 1. More plainly, the

---

[1] For a fuller review of the facts of this matter, see U.S. District Judge Brian R. Martinotti's Opinion filed October 26, 2018. ECF No. 54 at 1-2, 3-7.

Patent covers a bone-anchoring screw that has two, distinct screw. ECF No. 37-2, Ex. 5; ECF No. 3-4,¶8. At the same time, Cochlear filed a Motion for a Preliminary Injunction, seeking to prevent Oticon from selling the Ponto BHX Implant. ECF No. 3. Oticon filed its Answer to the Complaint in July 2018. ECF No. 35. Following an August 23, 2018 Initial Conference, this Court issued a Discovery Plan and Order on September 12, 2018. ECF No. 50. Pursuant to that Order, the last day to file a Motion to Amend Pleadings was set for October 1, 2018. *Id.* at ¶5. Among other relevant dates included in that Order, October 9, 2018 was set as the deadline for service of Invalidity Contentions, with October 15, 2018 being the date for responses to Invalidity Contentions. *Id.* The Order was silent about any deadlines for amending Invalidity Contentions and Responses. The Order did state that while the Parties exchanged initial disclosures on July 31, 2018, they "have not yet commenced formal discovery." *Id.* at ¶2. The Order did not set a date for the end of discovery. U.S. District Judge Brian R. Martinotti denied the Motion for Preliminary Injunction on October 26, 2018. ECF No. 54-55. Plaintiff filed the instant Motion to Amend on December 4, 2018. ECF No. 57. Pursuant to the briefing schedule agreed to by the Parties and Ordered by this Court, ECF No. 64, Oticon's opposition was filed on January 9, 2019, ECF No. 69, while Cochlear filed a Reply on January 23, 2019. ECF No. 74.

## II.  DISCUSSION
### A.  Amending the Complaint

#### 1.  Cochlear's reasons for amending the Complaint.

Cochlear seeks to amend the Complaint to add an allegation that Defendants willfully infringed the '807 patent and to seek increased damages. *See* proposed Amended Complaint at ECF No. 58-1, Exhibit A at ¶¶31,b. At the heart of the willful-

infringement claim is Cochlear's assertion that Oticon hired the inventor of the '807 patent, Lars Jinton, and then had Mr. Jinton, among other things, "lead Oticon Medical's development of infringing features of the Ponto BHX implant." *Id*. at ¶23. Because of Mr. Jinton's employment history with Cochlear and his being the one-time named holder of the patent, Cochlear contends, Oticon "knew or should have known, immediately upon becoming aware of the '807 patent, that the Ponto BHX implant infringed that patent." *Id.* at ¶25. As a result, Cochlear contends, Oticon's "infringement of the '807 patent was willful." *Id.* at ¶31. Because it now believes the infringement was willful, Cochlear seeks "increasing damages." *Id.* at p.18,¶b.

Procedurally, Cochlear contends the Motion should be granted pursuant to the liberal standard of Fed. R. Civ. R. 15, which states that a "court should freely give leave [to amend a pleading] when justice so requires." *See* Pl. Br. in Support of Mot. to Am. Complaint, ECF No. 59 at p.9 (*quoting* Rule 15). Cochlear says Rule 15 should govern the Motion because "[f]act discovery is not close to completion; it has barely started, and no deadline for finishing fact discovery has even been set. Expert discovery has not yet begun." *Id.* at p.10. Cochlear cites High 5 Games LLC v Marks for the proposition that, as U.S. Magistrate Judge Mark Falk there stated, "it makes zero sense to hold Plaintiffs to an amendment deadline of December 2014 when discovery may now remain open well into 2016." *Id.* at p.11 (*quoting* High 5 Games, 2017 WL 349375 at *3 (D.N.J. 2017).

Still, Cochlear is cognizant that the Court set October 1, 2018 as the deadline for filing any motion to amend a pleading or add a party. *See* Pl. Br. in Support of Mot. to Am. Complaint, ECF No. 59 at p.3. Rule 16 applies "where a motion to amend is made after a scheduling order deadline has passed." *Id.* at 9-10 (*quoting* Jani v. The Provident

Bank, 2016 WL 830802, at *1 (D.N.J. 2016). Cochlear contends the Motion should be granted even under the stricter standard of Rule 16, which requires a showing of "good cause." *Id.* at 10 (*quoting* Rule 16). Cochlear quotes the Jani Court to the effect that a "moving party may show good cause by establishing 'that the scheduling order deadlines could not be reasonably met despite the party's diligence.'" *Id.* at 9-10 (*quoting* Jani, 2016 WL 830802, at *4. Cochlear contends the October 1, 2018 deadline for motions to amend could not be met because it did not receive the discovery from which it learned of Mr. Jinton's role from Oticon until October 4, 9 and 11, 2018. *Id.* at pp.4-5. Cochlear says that "[b]y October 23, 2018 Cochlear had diligently uncovered the evidence in this document production" that it now seeks leave to include in its pleadings. *Id.* at 12-13. Cochlear contends that upon learning of these facts it quickly raised the prospect of amending the Complaint with Oticon, which "declined to stipulate to any of the amendments." *Id.* at p.8. Thus, Cochlear says, "strictly applying the October 1, 2018 date to amend the pleadings would be incongruous and unjust." *Id.* at p.11.

     **2. Oticon's objections to amending the Complaint.**

Oticon nowhere addresses Cochlear's contention that the Court should be guided by the Rule 15 standard in considering the Motion. Instead, Oticon focuses its opposition on Rule 16's required "good cause" showing, which it contends Cochlear can not meet. First, Oticon says, Mr. Jinton's employment at Oticon was well-known in the industry and was publicized on Oticon's website. *See* Def.'s Br. in Opp., ECF No. 69 at pp.2-3. Therefore, Cochlear was on notice of this information before it filed the Complaint and cannot claim to have first learned of Mr. Jinton's involvement in designing Oticon products until after the October 1, 2018 deadline had lapsed for motions to amend the

pleadings. More substantively, Oticon contends Mr. Jinton did not work on the Ponto BHX, but rather on other products, including a predecessor product called Ponto Wide. *Id.* at p.2. Oticon contends Ponto Wide is not an infringing product and that Cochlear recognized this during the Preliminary Injunction stage of this litigation when Plaintiff argued that "Oticon Medical could avoid the hardship of an injunction by 'simply return[ing] to selling the implant it offered prior to the BHX implant.'" *Id.* at 2 (*quoting* Pl.'s Mem. in Support of Prelim. Inj., ECF No. 3-1 at p.16.

Oticon further contends that, even if Cochlear did not learn about the implications of Mr. Jinton's Oticon employment until after October 1, 2018, Cochlear cannot meet the "good cause" standard because it was not diligent in pursuing discovery. That is because, Oticon asserts, Cochlear waited until August 31, 2018 to serve its discovery requests while, pursuant to Fed. R. Civ. P. 26(d)(1), it could have served those discovery requests on July 17, 2018, the date of the Rule 26 conference between the parties. *Id.* at pp.8-9. A consequence of Cochlear's delay, Oticon contends, was a deadline for discovery production that fell after the scheduling order's deadline for filing motions to amend. *Id.* at p.9. Oticon further contends that Cochlear was not diligent in reviewing this discovery because Cochlear failed to "factor it into its October 15, 2018 contentions." *Id.* at p.11.

Finally, Oticon contends the Motion is an attempt by Cochlear to change direction after the Court "rejected the flawed theories in Cochlear's preliminary injunction application." *Id.* at p.5. "[R]eturning this case to the starting gate" by granting leave to amend the Complaint, Oticon contends, would prejudice it by "forcing Oticon Medical to devote substantial resources to defend against what Cochlear now tacitly concedes was an ill-formed and poorly developed theory of its case." *Id.* at p.5-6.

### 3. Cochlear's Reply

Cochlear replies that Oticon's contention that all the facts about the alleged willful infringement were known to Cochlear before Cochlear filed the Complaint is belied by the fact that Oticon's documents describing its product in detail and the role Mr. Jinton played in its development was produced in discovery designated as "Highly Confidential—Outside Attorneys' Eyes Only," pursuant to a discovery confidentiality agreement between the Parties. *See* Pl. Reply Br., ECF No. 74 at p.1.

Cochlear further contends that Oticon's suggestion that Cochlear is abandoning its initial allegations and recasting its case is rebutted by the fact that the proposed Amended Complaint still includes "[e]very allegation made when the case was filed." *Id.* All Cochlear seeks to accomplish via the Motion, it says, is the addition of "facts and claims based on newly discovered evidence." *Id.* Cochlear notes that the preliminary injunction was "a hearing in which neither party [is] required to prove his case in full" and thus the denial of a preliminary injunction "does not foreclose Cochlear from taking discovery and proceeding with its case on all theories." *Id.* at p.2 (*quoting* Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 681 (Fed. Cir. 1990); *citing* PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1567 (Fed. Cir. 1996).

More specifically, Cochlear contends that while the Oticon website identified Mr. Jinton as Oticon's Director of Engineering it is silent about Mr. Jinton's "direct and personal role designing the Ponto BHX implant, which is revealed for the first time in Oticon's confidential production documents." *Id.* at p.6. Regardless, Cochlear contends, the factual basis of Oticon's opposition to the Motion is "not particularly proper for a motion to amend, essentially treating the motion like one for summary judgment." *Id.* at

p.3. Cochlear cites two cases, <u>Sprint Comm'ns Co. v. Time Warner Cable, Inc.</u>, 2013 WL 6589564 (D.Kan. 2013) and <u>Prism Techs., LLC v. Adobe Sys., Inc.</u>, 2012 WL2577213 (D.Neb. 2012), for the proposition that a Complaint can be amended to include willful-infringement claims where leave to amend was sought well after a deadline to amend pleadings had passed because the patent owner did not learn relevant facts until after that deadline had passed. *Id.* at p.8. Here, Cochlear contends, it did not learn about Mr. Jinton's role in working on the accused implant until after it received discovery from Oticon. *Id.* at p.8-9. Also, Cochlear says, "Oticon's protest that Mr. Jinton did not work on the accused Ponto BHX implant is factually incorrect." *Id.* at p.8 (*citing* Def.'s Opp., ECF No. 69 at pp.2,9). Cochlear contends the discovery produced by Oticon shows that Mr. Jinton worked on a Wide Diameter Implant that is the basis of the Ponto BHX implant. *Id.* at p.5. Thus, Cochlear says, Mr. Jinton was "personally and directly involved in designing the BHX implant, although it was not called that at the time." *Id.* As a result, Cochlear contends, Cochlear has good cause to add an allegation of willful infringement and "Oticon's arguments to the contrary are not meritorious." *Id.*

### B. Amending the Infringement Contentions

#### 1. Cochlear's reasons for amending the Infringement Contentions.

Cochlear seeks leave to amend its Infringement Contentions in order to add allegations of willful infringement based on the claims detailed above related to Oticon's hiring of Mr. Jinton and Mr. Jinton's subsequent involvement with the Ponto BHX implant. *See* proposed Amended Infringement Contentions, ECF No. 58 at §H. Here too Cochlear contends it was "diligent" in seeking leave to amend because it brought the evidence it found in "recently uncovered nonpublic evidence" discovery to Oticon's

attention "within weeks of receiving the production." *See* Pl. Br in Support, ECF No. 59 at p.15. It further contends that Oticon will not suffer "undue prejudice, as parties have just barely started fact discovery, expert discovery has not yet begun and most case dates have yet to be calendared." *Id.*

Cochlear also seeks leave to amend its infringement claims regarding what it calls a microgroove on the bone-anchoring screw. *Id.* As with the willful-infringement claim, Cochlear says leave to amend should be granted because it "diligently served its production requests" and then "diligently uncovered the evidence in the resulting document production that Oticon's Ponto BHX implant has an infringing micro grove." *Id.* Cochlear further contends that it "promptly alerted Oticon that Cochlear wanted to update its infringement contentions in view of" the above claims in late October 2018 and sent its proposed amended Infringement Contentions to Oticon. *Id.* at p.15-16.

### 2. Oticon's objections to amending the Infringement Contentions.

Oticon contends Cochlear's Motion here also is "untimely and unsupported by [the] 'good cause'" required by Rule 16. *See* Def.'s Opp. Br., ECF No. 69 at p.11.

The Motion is untimely, Oticon contends, because Cochlear had or should have had via reasonable prelitigation due diligence notice of what Cochlear describes as the Ponto BHX's infringing microgroove before Cochlear filed its Complaint. *Id.* at pp.11-12. Oticon makes two arguments. First, Oticon says the Ponto BHX has been in the U.S. marketplace since mid-2015, so Cochlear should have been able to get either a version of or photographs of the Ponto BHX implant before filing the Complaint that would have "revealed the structure Cochlear now says is a 'circumferential groove.'" *Id.* at p.12. Second, Oticon says Cochlear should have been able to learn from public materials, such

as the Oticon website, that the previous Ponto Wide product on which the Ponto BHX implant is based included a "'micro groove on the bone-facing surface of the implant's screw head.'" *Id.* The website, it says, even included a photograph that labeled the "micro groove" and discussed its purpose. *Id.* "The presence of the 'micro groove' in the previous-generation non-infringing product," Oticon contends, "would have alerted a reasonable and diligent litigant to the possibility of a similar structure appearing on the 'Ponto BHX.'" *Id.* at p.13.

Oticon also contends the Motion is unsupported by good cause because the proposed amendments will harm Oticon. *Id.* Oticon says Cochlear is seeking merely to switch infringement theories after Oticon was forced to "devote substantial resources to defend against Cochlear's preliminary injunction motion," a forum in which the Court "rejected Cochlear's first and best theory of infringement." *Id.* at pp.1,6,13. Granting this Motion, Oticon contends, "threatens yet another round of redundant costs on Oticon Medical, as [Cochlear] returns to the starting line" of this litigation. *Id.* at p.13.

### 3. Cochlear's Reply

Cochlear responds that its Motion is timely because Cochlear diligently served production requests within a week of the Initial Conference, and it then diligently uncovered the evidence of the infringing micro-groove after Oticon produced its discovery. *See* Pl. Reply Br., ECF No. 74 at p.10. Cochlear contends also that it was diligent in informing Oticon of its intent to amend the Complaint and Infringement Contentions based on the documents Oticon produced. *Id.*

Cochlear rejects Oticon's contention that the Ponto BHX microgroove was readily knowable either from obtaining the product or from surveying publicly available

materials to discern the engineering of that product. *Id.* at p.11. First, Cochlear says that, contrary to Oticon's contention, the Ponto BHX "implant is not easily obtainable by a competitor to Oticon." *Id.* Cochlear further asserts that it "did not have access to a Ponto BHX implant until Oticon produced one in October 2018." *Id.* Second, Cochlear said the publicly available materials "did not, however, clearly show the geometry of the micro groove in the Ponto BHX implant." *Id.* What public documents showed, Cochlear contends, was "one groove in the Ponto BHX implant." *Id.* But, it was not until receiving documents from Oticon—documents Oticon "designated Highly Confidential—Outside Attorneys' Eyes Only"—that, Cochlear says, it was able to observe that the "Ponto BHX implant has a second infringing circumferential groove—the micro groove." *Id.* at pp.11-12. Cochlear further contends that, even if Cochlear had discovered that information on Oticon's website, Oticon describes the microgroove as under a flange, while the confidential drawings produced by Oticon show that this microgroove "is not under the flange, but rather between the flange and the threads of the implant." *Id.* at p.12. Because it was only with the assistance of Oticon's discovery that Cochlear was able to realize the "true nature" of the Ponto BHX microgroove, Cochlear contends Oticon has "no grounds for charging Cochlear with ignoring publicly available information and not conducting a reasonable investigation." *Id.*

## C. Amending Responses to Oticon's Invalidity Contentions

### 1. Cochlear's reasons for amending its responses to Oticon's invalidity contentions.

Cochlear seeks to amend its responses to Oticon's invalidity contentions in order to add a fourth response asserting that Oticon can not lawfully challenge the validity of the '807 patent because what it alleges are the infringing features of Oticon's BHX

implant were developed by Mr. Jinton, who at one time was the named holder of the '807 patent. *See* Proposed Amended Responses to Invalidity Contentions, ECF No. 58, Exhibit F at §H. Cochlear contends that, because Mr. Jinton was the named holder of the '807 patent before he assigned that patent to Cochlear, Plaintiff can invoke the doctrine of assignor estoppel, a legal theory that prevents the assignor of a patent from later challenging the validity of that same patent. *Id.*

Cochlear repeats the same "good cause" arguments that it raised to support its Motion seeking leave to amend the Infringement Contentions and the Complaint, namely that it discovered Mr. Jinton's alleged participation in the development of the infringing Ponto BHX characteristics through diligent efforts and that granting leave to amend will not harm Oticon because the Parties have only just begun fact discovery and many case dates have not yet been determined. *Id.* at pp.18-19.

### 2. Oticon's objections to amending the responses.

Similarly, Oticon repeats its prior objections here, though it adds some details. First, Oticon contends the Motion as to the responses is untimely because Mr. Jinton's work on the Ponto Wide product "could have readily been discovered had [Cochlear] exercised reasonable diligence." Def. Opp. Br., ECF No. 69 at p.11. Second, Oticon disputes Cochlear's contention that Mr. Jinton "was deeply involved in the design of the accused 'Ponto BHX' product." *Id.* at p.10, n.6. Instead, Oticon contends, "all the evidence indicates that Mr. Jinton worked not on the accused 'Ponto BHX' device, but on the 'Ponto wide,' which Cochlear itself has identified as noninfringing, and is unaccused in this case." *Id.*

Oticon further contends that the Motion is procedurally improper because "the defense of assignor estoppel is not raisable merely by inclusion in the contentions," as Cochlear proposes. *Id.* at n.7. Rather, Oticon says, this defense must be raised, and recited with specificity, in the pleadings." *Id.* (*citing* Fed. R. Civ. P. 8(c)). Oticon thus concludes that "Cochlear's motion, by failing to seek leave to amend its Counterclaim Answer, thus seeks incomplete relief even for its own objectives." *Id.*

### 3. Cochlear's reply.

In reply, Cochlear contends that "Oticon's repeated claim that Mr. Jinton did not work on the accused Ponto BHX implant is false." Pl. Reply Br., ECF No. 74 at p.13. Instead, Cochlear contends, "the documents recently produced by Oticon show that Mr. Jinton designed the implant that became the Ponto BHX implant," even if that implant was not then explicitly called the Ponto BHX. *Id.*

Axiomatically, Cochlear contends, because information about Mr. Jinton's "direct 'hands on' role in the design of the Ponto BHX implant was not known" by Cochlear until Cochlear received Oticon's discovery "Cochlear could not have raised the assignor estoppel defense earlier." Id.

Finally, Cochlear disputes Oticon's contention that the Motion is procedurally deficient as to the defense of assignor estoppel. Cochlear contends that should the instant Motion be granted Oticon "will then need to answer [the Amended Complaint] and [amend its] counterclaim, and then Cochlear can answer the counterclaim" and raise the estoppel defense there, too. *Id.* at p.14.

### III. LEGAL STANDARDS

### 1. Leave to File an Amended Counterclaim

Pursuant to Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend] when justice so requires" (*see also* Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008)) and that the decision to grant a motion to amend a pleading rests in the sound discretion of the district court (*see also* Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); *see also* Morton International, Inc. v. A.E. Staley Manuf. Co., 106 F.Supp.2d 737, 744 (D.N.J. 2000)). Further, the Court notes that it "has discretion to deny the request only if the party's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party." Adams v. Gould, 739 F.2d 858, 864 (3d Cir. 1984); *see also* Foman v. Davis, 371 U.S. 178, 182 (1962); Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006); Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005).

Delay becomes "undue," and thereby creates grounds for a district court to refuse to grant leave, when it places an unwarranted burden on the Court, when the movant has had previous opportunities to amend, or when it becomes prejudicial to the opposing party. *See* Adams, 739 F.2d at 868; *see also* Cureton v. NCAA, 252 F.3d 267, 273 (2001). "[T]he Third Circuit has consistently recognized that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" Schindler Elevator Corp. v. Otis Elevator Co., 2009 WL 1351578, at *3 (D.N.J. 2009); *see also* Arthur, supra, 434 F.3d at 204 (*quoting* Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). "In determining what constitutes prejudice, the Second Circuit considers 'whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the

plaintiff from bringing a timely action in another jurisdiction.'" Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004); *see also* Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). The Third Circuit has "endorse[d] the Second Circuit approach." *Id.*

The Court notes that "in determining the futility of an amendment...[it] applies the same standard of legal sufficiency as applie[d] under Rule 12(b)(6)" and "accept[s] as true all factual allegations contained in the proposed amended [pleading] and any reasonable inferences that can be drawn from them." Walls v. County of Camden, 2008 WL 4934052, at *2–3, 2008 U.S. Dist. LEXIS 92940, at *6–7 (D.N.J. 2008); *see also* MedPointe Healthcare, Inc. v. Hi–Tech Pharm. Co., Inc., 380 F.Supp.2d 457, 462 (D.N.J. 2005); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); Brown v. Philip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001). "[I]f the proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend" but where the "proposed amendment is not clearly futile, then denial of leave to amend is improper." Harrison Beverage v. Dribeck Importers, Inc., 133 F.R.D. 463, 468–69 (D.N.J. 1990); *see also* Crete v. Resort Condos., Int'l, LLC, 2011 WL 666039, at *10–11, 2011 U.S. Dist. LEXIS 14719, at *31–32 (D.N.J. 2011); Lorenz v. CSX Corp., 1 F.3d 1406 (3d Cir. 1993). The Court "determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to [the moving party]." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010).

### 2. Leave to File Amended Infringement Contentions

Pursuant to Local Patent Rule 3.7, leave to amend infringement contentions may be granted "by order of the Court upon a timely application and showing of good cause."

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." Computer Accelerations Corp. v. Microsoft Corp., 503 F.Supp.2d 819, 822 (E.D.Tex. 2007). "The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." Atmel Corp. v. Info. Storage Devices, Inc., 1998 WL 775115, at *2 (N.D.Cal. 1998). Furthermore, the courts have recognized several factors that should be weighed in determining whether good cause exists such that leave to amend infringement contentions should be granted:

> (1) the reason for the delay and whether the party has been diligent;
> (2) the importance of what the court is excluding and the availability of lesser sanctions;
> (3) the danger of unfair prejudice;
> (4) the availability of a continuance and the potential impact of a delay on judicial proceedings.

See Davis–Lynch, Inc. v. Weatherford Int'l, Inc., 2009 U.S. Dist. LEXIS 1644, at *8, 2009 WL 81874 (E.D.Tex. 2009) (citing Computer Acceleration, 503 F.Supp.2d 819).

Rule 3.7 "is not a straitjacket into which litigants are locked from the moment their contentions are served," but instead, "a modest degree of flexibility [exists], at least near the outset." Comcast Cable Communs. Corp. v. Finisar Corp., 2007 WL 716131, at *2 (N.D.Cal. 2007). Therefore, while the Local Patent Rules strive to have a party establish their contentions early on, it is important to recognize that "preliminary infringement contentions are still preliminary." General Atomics v. Axis–Shield ASA, 2006 WL 2329464, at *2 (N.D.Cal. 2006).

### 3. Leave to File Amended Invalidity Responses

The same Local Patent Rule that governs amending Infringement Contentions also applies to motions seeking leave to amend Invalidity Responses. *See* AstraZeneca AB v. Dr. Reddy's Labs. Inc., 2014 WL 1292226, at *5 (D.N.J. 2014). Rule 3.7 permits Invalidity Responses to be amended "by order of the Court upon a timely application and showing of good cause." *Id.* (*quoting* L. Pat. R. 3.7). Pursuant to Rule 3.7, a court may permit a party to amend its invalidity contentions provided the following three elements are established: (1) the moving party makes a timely application to the court; (2) there is good cause for the amendment; and (3) there is no undue prejudice to the adverse party. Id. (*citing* Jazz Pharmaceuticals, Inc. v. Roxane Laboratories, Inc., 2012 WL 3133943 at *2 (D.N.J. 2012)). "The rule provides a 'non-exhaustive' list of examples of circumstances that may support a finding of good cause" that includes the "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contention." *Id.* (*quoting* Rule 3.7). Here too, as U.S. District Judge Joel A. Pisano discussed, the "Local Patent Rules 'are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *Id.* (*quoting* King Pharmaceuticals. Inc. v. Sandoz, Inc.*,* 2010 WL 2015258, at *4 (D.N.J. 2010). "However, while amendments to contentions are not granted as liberally as requests for amendments to pleadings, the Patent Rules retain some degree of flexibility and are not intended to be 'a straitjacket into which litigants are locked from the moment their contentions are served.'" *Id.*

## IV.   ANALYSIS

### A. Leave to Amend the Complaint.

Pursuant to Fed. R. Civ. P. 15(a), a party can amend its pleadings as of right within 21 days after the service of either a responsive pleading or a Rule 12 motion, whichever is earlier. Defendant was served the Complaint in April 2018, ECF No. 15, and Oticon filed its Answer and Counterclaim on July 2, 2018. ECF No. 35. As a result, Cochlear's deadline for an "as of right" amendment of the Complaint has passed. Pursuant to the Federal Rules of Civil Procedure, Plaintiff now can amend the Complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). As Defendant opposes the instant Motion, Plaintiff requires this Court's leave to amend the Complaint.

Plaintiff contends the Motion should be governed solely by the lenient standards of Fed. R. Civ. P. 15, pursuant to which the Court "should freely give leave [to amend] when justice so requires." *See also* Bjorgung v. Whitetail Resort, supra, 550 F.3d at 266. In such cases, the decision to grant a motion to amend a pleading rests in the sound discretion of the district court. *See* Zenith Radio, supra, 401 U.S. at 330; *see also* Morton International, supra, 106 F.Supp.2d at 744. Under Rule 15, the Motion may be denied "where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" Young v. United States, 152 F. Supp. 3d 337, 353 (D.N.J. 2015) (*citing* United States ex rel. Schumann v. Astrazeneca Pharms. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (*quoting* Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000)).

Defendant contends the Motion should be governed solely by Fed. R. Civ. P. 16, which applies to Motions filed after deadlines set by a court. Pursuant to Rule 16, the

party seeking to amend a pleading after the deadline set by an applicable scheduling order must demonstrate "good cause" for modifying the order. Fed. R. Civ. P. 16(b)(4). "Good cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." <u>Young v. United States</u>, 152 F. Supp. 3d at 352–53 (*citing* <u>Fermin v. Toyota Material Handling, U.S.A., Inc.</u>, 2012 WL 1393074, at *3 (D.N.J. 2012) (internal quotations and alterations omitted). Pursuant to this Court's Discovery Plan and Order dated September 12, 2018, the last day to file a Motion to Amend Pleadings was October 1, 2018. ECF No. 50 at ¶5. Thus, Plaintiff's Motion was filed after this Court's deadline.

In actuality, both Rules govern. Where a Motion for Leave to Amend comes after a court-imposed deadline, the lenient Fed. R. Civ. P. 15(a)(2) standard that "[t]he court should freely give leave when justice so requires" yields to the "good cause" requirement of Rule 16. <u>Sang Geoul Lee v. Won Il Park</u>, 720 F. App'x 663, 669 (3d Cir. 2017). Thus, Plaintiff first must show it may modify the Scheduling Order pursuant to Rule 16 to allow an amended pleading filed out of time, and then it must show that it may file the amended pleading under Rule 15. <u>Young v. United States</u>, 152 F. Supp. 3d at 352.

This Court's inquiry begins then with the question posed by Rule 16, namely whether Plaintiff has "good cause" for modifying the Scheduling Order setting the October 1, 2018 deadline for motions to amend a pleading in order to consider this Motion timely filed.

Plaintiff seeks to amend the Complaint to add count of willful infringement. *See* proposed Amended Complaint at ECF No. 58, Exhibit A at ¶18. This claim is evidenced,

Plaintiff contends, by the assertion that Mr. Jinton not only was employed by Oticon but that he also led the work on the aspects of the Ponto BHX implant that Cochlear alleges infringe its '807 patent. *Id.* at ¶23. Plaintiff contends it learned of Mr. Jinton's precise role from discovery it received from Oticon only after the deadline had passed, making it an impossibility for it to have adhered to that October 1, 2018 deadline for Motions for Leave to Amend. *See* Pl. Br., ECF No. 59 at p.3.

Oticon disputes this contention, saying Mr. Jinton's employment was a matter of public knowledge and even advertised on Oticon's website through, among other things, the publication of a white paper written by Mr. Jinton. *See* Def. Opp. Br., ECF No. 69 at pp.2-3. Oticon further contends that Mr. Jinton did not work on the Ponto BHX. *Id.* at p.2. In addition, but related, to its denial of Cochlear's factual assertion, Oticon contends there is no "good cause" to ignore the October 1, 2018 Motion deadline because Cochlear "failed to undertake a full investigation of the accused product before filing suit." *Id.* at p.1. If Cochlear had undertaken such an investigation, Oticon contends, Cochlear would have learned of Mr. Jinton's employment at Oticon before filing the Complaint. *Id.* at p.6. Thus, this Court, Oticon contends, should not reward Cochlear for failing to fully investigate this point before instituting this litigation. *Id.*

Cochlear responds that if Mr. Jinton's precise duties were publicly known, why did Oticon produce discovery containing such information under the label "Highly Confidential—Outside Attorney's Eyes Only." Pl. Reply Br., ECF No. 74 at p.1. Cochlear states that, "[i]f all of these facts were really known publicly, then Oticon violated the Protective Order by designating and maintaining the confidentiality of these

documents." *Id.* Instead, Cochlear says, "[t]he truth is, however, that the information was not public." *Id.*

As stated above, "[g]ood cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." <u>Young v. United States</u>, 152 F. Supp. 3d at 352–53, (*citing* <u>Fermin,</u> 2012 WL 1393074, at *3. Cochlear contends it was impossible to meet the October 1, 2018 deadline because it did not learn of the link between Mr. Jinton's Oticon duties and the alleged infringement until Oticon produced requested discovery after that deadline.

The Court is not persuaded by Oticon's suggestion that the Motion ought to be denied because Cochlear failed to conduct a full investigation into the alleged infringing product. Fed. R. Civ. P. 11 requires an inquiry "reasonable under the circumstances" such that a party can certify that, among other things, the claims in a pleading are warranted by existing law and the factual contentions have evidentiary support. Rule 11 provides that the evidentiary support may become apparent "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The Court is unaware of any higher, full investigation duty seemingly referred to by Oticon, and Oticon has presented no case law to support this position. Furthermore, the Court concludes that Cochlear, to the extent it could have suspected Mr. Jinton's role in developing the allegedly infringing aspects of the Ponto BHX implant, exercised reasonable prudence in waiting to receive evidentiary support for this assertion in discovery before seeking leave to add a willful-infringement allegation to the Complaint.

The Court also is not persuaded by Oticon's contention that Cochlear did not conduct discovery diligently because it was possible pursuant to Rule 26(f) for Cochlear to have served discovery requests "as early as July 17," the date of the parties' Rule 26 meeting, rather than serving those requests at the end of August. Def. Opp. Br., ECF No. 69 at p.9. But, the Certification of Robert Courtney, counsel of record for Oticon Medical AB and Oticon Medical LLC, makes clear Cochlear did pursue discovery diligently. First, six days after the Rule 26 meeting of the parties, Oticon received Cochlear's proposals for a joint discovery plan and scheduling order. Courtney Cert., ECF No. 69-1 at ¶5. Oticon disagreed with certain aspects of that proposed scheduling order. *Id.* at ¶6. The Parties then attended a Rule 16 Initial Conference on August 23, 2018, at which the Court "made determinations regarding the schedule and instructed that the parties submit a revised joint discovery plan, which was submitted August 30, 2018." *Id.* at ¶8. Cochlear served its first discovery requests on Oticon the next day, on August 31, 2018. *Id.* at ¶10. In light of the active discussions of the parties regarding discovery and scheduling issues, as well as the Court's requirement that the parties submit a revised joint discovery plan, the Court declines to interpret the roughly one month from when it was technically possible for Cochlear to have served discovery requests pursuant to Rule 26 to the date on which Cochlear actually served discovery requests as evidencing a less-than-diligent effort on Cochlear's part. Indeed, the Court concludes Cochlear's service of discovery requests the day after the parties submitted an agreed-to joint discovery plan as evidence of its diligence.

The Court also does not find a lack of diligence in the timing of the actual Motion for Leave to Amend, which was filed on December 4, 2018, or the first Tuesday of the

month. ECF No. 57. The deadline set by this Court's scheduling order was the first Monday of October 2018, or a difference of 64 days. The Court does not agree with Oticon's characterization of that interregnum as "so long after the Scheduling Order's deadline for such a motion." Def. Opp. Br., ECF No. 69 at p.6. First, while Cochlear cites two cases in which leave to amend after a scheduling order deadline was granted, Sprint Comm'ns, supra, 2013 WL 6589564 (granting patent owner leave to amend though leave was sought four months after the deadline had passed) and Prism Techs., supra, 2012 WL 2577213 (granting leave to amend after the deadline had passed and just five months before trial), Oticon cites no case law supporting the contention that a "so long" period of 64 days constitutes a delay of such length as to disqualify a party as diligent and to support denying a leave-to-amend motion. The Court finds the conclusions of those cases persuasive. Second, Cochlear contends it contacted Oticon on October 23, 2018 to raise the prospect of amending its Complaint and Infringement Contentions. Pl. Br., ECF No. 59 at p.8. Three days later Cochlear sent the proposed Amended Complaint to Oticon, which "declined to stipulate to any of the amendments." *Id.* Cochlear does not say when it received Oticon's response declining to stipulate to the proposed amendments, while Oticon says it responded promptly. Regardless, it is clear to the Court from this sequence both that Cochlear advanced along the path to the instant Motion in a diligent manner and that Oticon was aware of Cochlear's intentions from the earliest stages, ameliorating any potential prejudice to Oticon.

In the alternative, Oticon urges the Court to reject Cochlear's motion because Oticon denies that Mr. Jinton worked on the allegedly infringing aspects of the Ponto BHX implant. The Court declines to reach that conclusion, observing that the dispute

over whether Mr. Jinton worked on the Ponto BHX implant or the antecedents of the allegedly infringing aspects of the Ponto BHX is the type of factual contention intended to be tested through litigation and not through the vehicle of a Motion for Leave to Amend a Pleading. Also, and as discussed below, it is well-established that the Court's Rule 15 inquiry assumes the truth of all facts contained in a proposed amended pleading. Thus, Oticon's opposition on such grounds is not pertinent.

After considering the relevant factors, the Court finds Cochlear has met the "good cause" standard of Rule 16 required to amend the Scheduling Order and thus the Court will consider the Motion as timely filed.

Having considered the Motion through the prism of Rule 16's "good cause" standard, the Court now must examine the proposed Amended Complaint through the lens of Fed. R. Civ. P. 15. <u>Sang Geoul Lee v. Won Il Park</u>, supra, 720 F. App'x at 669 (*citing,* e.g., <u>Holmes v. Grubman</u>, 568 F.3d 329, 334–35 (2d Cir. 2009) (noting that "where...a scheduling order governs amendments to the complaint...'the lenient standard under Rule 15(a)...must be balanced against the [good cause] requirement under Rule 16(b)'"). As stated above, the Court "has discretion to deny the request only if the party's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party." <u>Adams</u>, *supra,* 739 F.2d at 864; *see also* <u>Foman</u>, supra, 371 U.S. at 182; <u>Arthur</u>, supra, 434 F.3d at 204; <u>Hill v. City of Scranton</u>, supra, 411 F.3d at 134.

Delay becomes "undue" when it places an unwarranted burden on the Court, when the movant has had previous opportunities to amend, or when it becomes prejudicial to the opposing party. *See* <u>Adams</u>, 739 F.2d at 868; *see also* <u>Cureton</u>, supra, 252 F.3d at 273. "[T]he Third Circuit has consistently recognized that 'prejudice to the

non-moving party is the touchstone for the denial of an amendment.'" Schindler Elevator, supra, 2009 WL 1351578, at *3; *see also* Arthur, supra, 434 F.3d at 204 (*quoting* Cornell, supra, 573 F.2d at 823).

The Court concluded in its Rule 16 analysis that Cochlear had been diligent in pursuing the instant Motion. The Court concludes that it is therefore axiomatic that there can be no "undue delay" as contemplated by Rule 15. Ultimately, however, the Third Circuit has stated that "[t]he question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier…" Adams, supra, 739 F.2d at 868. Here, Plaintiff's motion is to add a claim of willful infringement based on information Plaintiff says it learned of from discovery it received only after the motion-to-amend deadline. The Court sees no bad faith in this explanation.

The Court next addresses the question of prejudice to Oticon. "In determining what constitutes prejudice, the Second Circuit considers 'whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Long v. Wilson, supra, 393 F.3d at 400; *see also* Block v. First Blood, supra, 988 F.2d at 350. The Third Circuit has "endorse[d] the Second Circuit approach." *Id.*

Oticon's brief is devoid of any Rule 15-based opposition. To the extent that Oticon's contention that the proposed Amended Complaint would harm Oticon by "threaten[ing] yet another round of redundant costs" on Oticon constitutes a Rule 15

argument, the Court is not persuaded. Here, the Court is guided by the reasoning of U.S. Magistrate Judge Mark Falk, who in granting a Motion for Leave to Amend in <u>In re L'Oreal Wrinkle Cream Mktg. Practices Litig.</u>, observed that "it makes zero sense to hold Plaintiffs to an amendment deadline of December 2014, when discovery may now remain open well into 2016." <u>L'Oreal</u>, 2015 WL 5770202, at *3 (D.N.J. 2015). While Judge Falk's observation was made in the context of a Rule 16 analysis, it is germane here, for in the instant matter Oticon seeks to hold Cochlear to an amendment deadline, even one pushed for by Cochlear, when there is no end date for discovery. Because there is no set end for discovery, granting the instant Motion can not on its face significantly delay resolution of this litigation, while Defendant will have ample time to conduct any discovery necessitated by the proposed Amended Complaint. Furthermore, the Court observes that the willful-infringement allegation is drawn, Cochlear says, from discovery produced by Oticon, a circumstance that likely will obviate Oticon's discovery needs in order to counter Plaintiff's claim. Thus, the Court concludes that granting the Motion would not result in any undue prejudice to Defendant.

"[I]n determining the futility of an amendment...[the Court] applies the same standard of legal sufficiency as applie[d] under Rule 12(b)(6)" and "accept[s] as true all factual allegations contained in the proposed amended [pleading] and any reasonable inferences that can be drawn from them." <u>Walls v. County of Camden</u>, supra, 2008 WL 4934052, at *2–3 (D.N.J.2008); *see also* <u>MedPointe Healthcare</u>, supra, 380 F.Supp.2d at 462; <u>Alvin v. Suzuki</u>, supra, 227 F.3d at 121; <u>Brown v. Philip Morris</u>, supra, 250 F.3d at 796. "[I]f the proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend" but where the

"proposed amendment is not clearly futile, then denial of leave to amend is improper." Harrison Beverage, supra, 133 F.R.D. at 468–69; *see also* Crete v. Resort Condos., supra, 2011 WL 666039, at *10–11 (D.N.J. 2011); Lorenz v. CSX, supra, 1 F.3d 1406. The Court "determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to [the moving party]." Great Western Mining, supra, 615 F.3d at 175.

Plaintiff contends the proposed Amended Complaint would not be futile because the documents it received in discovery from Oticon "plainly support an assertion of willful patent infringement." Pl Br., ECF No. 59 at p.12. Defendant makes no futility argument in its opposition to the Motion. Rather, Defendant disputes the factual basis of the willful-infringement claim, namely that Mr. Jinton while employed by Oticon "led Oticon's development of the Ponto BHX implant to compete with the implant he designed for Cochlear." *Id* at p.3, Def. Opp. Br., ECF No. 69 at p.2. However, for the purposes of a Motion to Amend analysis, it is well established that the Court takes all pleaded allegations as true. *See* Great Western Mining, supra, 615 F.3d at 175.

Furthermore, the willful-infringement claim is not a new theory of the case, as asserted by Defendant, but rather a heighted pleading of the infringement already put forth by Plaintiff in the Complaint. As stated by the Federal Circuit, to establish willful infringement "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent; patentee must also show that the infringer knew or should have known of this objectively high likelihood." Trading Techs. Int'l, Inc. v. eSpeed, Inc., 595 F.3d 1340 (Fed. Cir. 2010) (internal citations omitted) (*citing* In re Seagate Technology, LLC, 497

F.3d 1360,1371 (Fed. Cir. 2007), abrogated by <u>Halo Electronics, Inc. v. Pulse</u> <u>Electronics, Inc., et al.</u>, 136 S.Ct. 1923 (2017). Assuming as true all facts contained in the proposed Amended Complaint, the Court concludes that the proposed Amended Complaint is not facially futile. Accordingly, Plaintiff's Motion for Leave to Amend the Complaint is **GRANTED**.

### B. Leave to Amend the Infringement Contentions

Pursuant to Local Patent Rule 3.7, leave to amend Infringement Contentions may be granted "by order of the Court upon a timely application and showing of good cause."

This Court's Scheduling Order of September 10, 2019 set a deadline for the disclosure of Infringement Contentions of August 30, 2019. Cochlear says it timely served its Infringement Contentions. *See* Chapman Cert., ECF No. 58 at p.14,¶14. Plaintiff now seeks to amend its Infringement Contentions to add the same factual assertions supporting the willful-infringement claim in its proposed Amended Complaint, namely that Mr. Jinton designed for Oticon an implant having features that infringed Cochlear's '807 patent. *See* Exhibit D to Chapman Cert., ECF No. 58 at p.98. In addition, Plaintiff's proposed amended Infringement Contentions states: "Oticon also knew or should have know that—in view of its privity with Mr. Jinton—the doctrine of assignor estoppel would preclude Oticon from challenging the validity of the '807 patent." *Id.* Cochlear add that its proposed amended disclosures "are supported by documents produced by Oticon and not otherwise in Cochlear's custody, possession and control." *Id.*

The parties here essentially repeat their arguments from the Motion for Leave to Amend the Complaint. Cochlear asserts it has "good cause" to amend because the addition of the willful-infringement contention is based on discovery received from

Oticon after the Motion deadline set by this Court. Oticon, in addition to disputing the factual assertion grounding this proposed Amended Infringement Contention, contends Plaintiff lacks the good cause required by the Rules because it believes Plaintiff was not diligent either in conducting discovery or in conducting a prelitigation investigation into Mr. Jinton's employment parameters with Oticon. That said, Oticon adds that the line concerning the doctrine of assignor estoppel is improper "because the defense of assignor estoppel is not raisable merely by inclusion in the contentions….The defense must be raised, and recited with specificity, in the pleadings" pursuant to Fed. R. Civ. P. 8(c). Def. Opp. Br., ECF No. 69 at p.10, n.7. Cochlear responds that should the Court grant leave to amend the Complaint, Oticon will need to answer the Amended Complaint and thus to amend its Counterclaim. Pl. Reply Br., ECF No. 74 at p.14. Then, Cochlear contends, it will be able to raise the assignor estoppel defense in its Answer to any Amended Counterclaim brought by Oticon. *Id.*

The Local Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." Atmel, 1998 WL 775115, at *2. Distinguishable from the liberal standard for amending the pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Id.* However, Rule 3.7 "is not a straitjacket into which litigants are locked from the moment their contentions are served," but instead, "a modest degree of flexibility [exists], at least near the outset." Comcast Cable, supra, 2007 WL 716131, at *2. Therefore, while the Local Patent Rules strive to have a party establish their

contentions early on, it is important to recognize that "preliminary infringement contentions are still preliminary." General Atomics, supra, 2006 WL 2329464, at *2.

In deciding whether Plaintiff's proposed amended contentions would unfairly prejudice Defendant, the Court considers whether permitting the proposed amendments would (1) require Defendant to expend significant additional resources, or (2) significantly delay resolution of the dispute. TFH Publications, Inc. v. Doskocil Mfg. Co., 705 F. Supp. 2d 361, 366 (D.N.J. 2010). For the same reasons stated above in reviewing each of these factors in the context of the proposed Amended Complaint, the Court finds that granting leave to amend Plaintiff's Infringement Contentions would not require Defendant to expend significant additional resources nor would it significantly delay resolution of the dispute. With no set end of discovery, Defendant will have ample opportunity to seek discovery to counter Plaintiff's proposed Amended Infringement Contentions and it is axiomatic that granting the Motion will not significantly delay resolution of litigation in which discovery has no end date. *See also* Moore v. Integrated Test Arizona Corp., 2010 WL 1333289, at *4 (D. Ore. 2010) (noting that while discovery is open, the prejudice is not so great as to warrant denying an opportunity to try claims on the merits). Also, the Court observes again that Cochlear seeks to add a heightened claim of the same infringement already presented in the Complaint and not a new or unrelated Infringement Contention. Accordingly, the Court finds that good cause exists to grant Plaintiff's Motion seeking leave to amend its Infringement Contentions.

### C. Leave to Amend the Invalidity Responses

Cochlear seeks leave to amend its Invalidity Responses to include its contention that Oticon is estopped from challenging the validity of the '807 patent by the assignor

estoppel doctrine, made relevant here because of Oticon's employment of Mr. Jinton and Mr. Jinton's involvement with the development of the infringing aspects of the Ponto BHX device. *See* Proposed Am. Invalidity Responses at ECF No. 58, Exhibit F at p.167.

The same Local Patent Rule that controls Infringement Contentions also applies here. Rule 3.7 allows a party to amend invalidity responses/contentions "by order of the Court upon a timely application and showing of good cause." Pursuant to this Rule, "a court may permit a party to amend its invalidity contentions provided the following three elements are established: (1) the moving party makes a timely application to the court; (2) there is good cause for the amendment; and (3) there is no undue prejudice to the adverse party. AstraZeneca v. Dr. Reddy's Labs., supra, 2014 WL 1292226, at *5 (*citing* Jazz Pharma, supra, 2012 WL 3133943 at *2. Among the "non-exhaustive" list of circumstances contemplated by the Rule that may support a finding of good cause is the "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contention." AstraZeneca v. Dr. Reddy's, 2014 WL 1292226, at *5 (*quoting* R. 3.7(c)).

As discussed above, the Local Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." Atmel, supra, 1998 WL 775115, at *2. Distinguishable from the liberal standard for amending the pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Id.* However, Rule 3.7 "is not a straitjacket into which litigants are locked from the moment their contentions are served," but instead, "a modest degree of flexibility [exists], at least near the outset." Comcast Cable, supra, 2007 WL

716131, at *2. Therefore, while the Local Patent Rules strive to have a party establish their contentions early on, it is important to recognize that "preliminary infringement contentions are still preliminary." <u>General Atomics</u>, supra, 2006 WL 2329464, at *2.

The arguments of both parties on this point largely reprise those for the Motion for Leave to Amend Infringement Contentions. And, for the same reasons stated above, in reviewing each of these factors in the context of the proposed Amended Infringement Contentions, the Court finds there is good cause to grant leave to amend: because of relevant facts revealed in discovery that was produced after the Motion deadline, and because the Court concludes there is no undue prejudice to the adverse party, as the Amended Invalidity Responses will not require Defendant to expend significant additional resources nor would it significantly delay resolution of the dispute. With no set end of discovery, Defendant will have ample opportunity to seek discovery to counter Plaintiff's proposed Amended Invalidity Responses and, as stated above, it is axiomatic that granting the Motion can not significantly delay resolution of litigation in which discovery has no end date. *See* <u>Moore v. Integrated Test Arizona</u>, supra, 2010 WL 1333289, at *4 (noting that while discovery is open, the prejudice is not so great as to warrant denying an opportunity to try claims on the merits). Accordingly, the Court finds that good cause exists to grant Plaintiff's Motion to amend its Invalidity Responses.

**D.  CONCLUSION AND ORDER**

The Court having considered the papers submitted and for the reasons set forth above,

**IT IS** on this 29th day of July 2019

**ORDERED** that Plaintiff's Motion to Amend the Complaint [ECF No. 57] is

**GRANTED** and that Plaintiff shall do so by **August 9, 2019**; and it is

**FURTHER ORDERED** that Plaintiff's Motion to Amend its Local Patent Rule

3.1 Infringement Contentions is **GRANTED;** and it is

**FURTHER ORDERED** that Plaintiff shall serve its Amended Infringement

Contentions no later than **August 9, 2019;** and it is

**FURTHER ORDERED** that Plaintiff shall serve its Amended Invalidity

Responses Contentions no later than **August 9, 2019.**

  s/ Douglas E. Arpert
**DOUGLAS E. ARPERT**
**United States Magistrate Judge**
